The Honorable, the Judge of the United States Court of Appeals for the 4th Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. All right, be seated please. All right, first case we're going to hear this morning is Hannah v. United Parcel Service and Mr. Laser, I think you're up. Yes, Your Honor. May it please the Court, good morning. My client, Mr. Hannah, is a long-term employee of the United Parcel Service. He's a truck driver, he's a deliverer. And the issue in this case is whether or not the It's a pretty simple issue. The question is whether or not the evidence supported jury trial on whether or not UPS offered Mr. Hannah a reasonable accommodation. Now as far as the elements on appeal, we don't have an issue as to whether or not my client had a disability. He had right hip bursitis. We also don't have an issue as to whether or not there was a denial of what my client wanted, which was another truck. He wanted a Dodge van or a vehicle with a softer suspension. The question for Your Honors today is whether or not when the district court decided that the employer could not offer Mr. Hannah the ride he wanted, the truck he wanted, whether or not that was in contravention of the evidence that we introduced. Let me just clarify just on that point. I didn't understand the employer to say they couldn't provide the truck. I thought they concluded he requested a smaller truck with softer suspension. They concluded that the route could not be served with one passing with a smaller truck. He would either have to double up, come back to the center and reload, or they would have to service that route with somebody else helping. That's what I thought their reasoning was. Is that right? Absolutely correct, Your Honor. Let me clarify if I may. The UPS, the employer said, were we to grant you your requested accommodation, it would violate the collective bargaining agreement. Now, let's assume that... I don't want to correct you, but I think you want to encompass fairly what their position was. I'm not sure that their main point was it would be a problem to bring somebody else and expand his job beyond have him cover his own route plus part of Mr. Hannah's route. Or Mr. Hannah would have to double back, go back to the center, reload and go, and that would take him beyond the normal hours of operation. Both of those were problematical, wouldn't you think? Well, Your Honor, that's where we have a disagreement. That's the issue. We put into evidence that it would not have resulted in the imposition that the defense suggests. That's our argument. And in support of that, we did offer substantial evidence. We contend that the evidence we offered presented a jury question on whether it would have been the imposition that UPS claims. To wit, we had an affidavit from a co-worker, Mr. Owens, that said, look, this truck was available on the lot. I used it in 2018. It was ready. It was available. That could have been offered. I have a question about that, but before we get to that, am I right? Picking up something Judge Niemeyer said, did your client ever request an accommodation other than having a smaller vehicle? Is there any sort of proffer that he said, I'd like something that's not a smaller vehicle, or is that the only accommodation he ever asked for? He did ask, Your Honor, for temporary alternative work at one point, and I believe that they had allowed him that as far as they could under the temporary, under the collective bargaining agreement. So for the things that are an issue between the parties right now, the only request is for a smaller vehicle? Yes, Your Honor. Okay, and then, so can I ask you on the vehicle, you said there's an affidavit that says there is a smaller truck, but to pick up what Judge Niemeyer was saying, I don't necessarily hear the employer's argument to offend. The reason we couldn't do that reasonably is not because there literally wasn't a truck. It was that this won't work because either your client will have to double up and that won't work or we'll have to give someone else a double route and that won't work. So whether there is or is not a truck is not some conjoined issue with the employer's explanation of why this wasn't a reasonable accommodation. So to answer that question, Your Honor, when OPS denies an accommodation or grants an accommodation, and this is in the record, it has to document what it did or did not do concerning a request for accommodation. It has to support that with records. But that's an argument that they failed to prove the reason they gave. That doesn't seem to renew the relevance of the existence of the smaller truck. That's an argument that they inadequately documented the reason they gave. Yes, Your Honor. It's our position that they didn't offer sufficient proof for denying the truck to cut to the chase. That is our position, that we had enough evidence for a jury to determine that there was a question as to whether they sufficiently documented and proved that it was unreasonable to deny my client his requested accommodation. I didn't understand that. I thought your argument was that the reasons they gave were not serious. That could have been taken care of or something. But the testimony was undisputed as to what they met and they discussed it. And then they advised him and it was undisputed as to what they determined. As they explained at trial, what they determined was, in the district court, they explained that it was a truck capacity problem. Yes, Your Honor. And that, I would submit, was an issue for fact. It was an issue as a matter of law. The district court said, well, that's conclusive. The truck capacity, we showed that he couldn't meet it. It's our position that there was a factual issue on that because they never attempted to see whether or not the packages would fit on the truck and they never allowed him a trial run on the route. That goes to the heart of our argument. We believe that the evidence showed a question. He testified that he could do that and if they gave him the truck, he could complete the run without violating the collective bargaining agreement, without imposing and requiring people to double their routes, and without requiring him to violate safety rules. That's really the whole centerpiece of our issue with the district court's ruling. We wanted our shot at a trial on that. We wanted that to be submitted to the jury. We think that is an issue of fact and not of law. And that really centers around why we appealed this because— What is the issue? The issue of fact is whether or not he would have, in fact, been able to do the route using a smaller truck. You think that's the genuinely disputed material fact? I think the disputed fact is whether or not it would have been reasonable for UPS to provide him with the vehicle he wanted. I mean, in other words— Okay, but let's say that they had given him a shot at doing it. And let's say they had been particularly generous and they had given him a week of a shot in doing it with the smaller truck. And let's say that after a week, he had not successfully completed the route within the time allowed. Could they then deny it on the grounds that we've now demonstrated this is not going to work, it's not a reasonable accommodation, or do you have some other argument about why? Okay, I have an argument about—first, I think they could deny it. But I would think we would have an argument under the United States, U.S. Airways Barnett case, which basically says, if you can show that there are exceptions. In other words, if it violates the collective bargaining agreement,  For example, if UPS were able to allow him to do this without infringing on other workers' rights, or they had done this in the past. And that really gets into the factual dispute here, where we're saying it may very well have been a violation, but it might have been a situation where this would be an exception to that. In other words, under the U.S. Airways Barnett case, that's what we're saying. But wouldn't it be your—I mean, I agree with you that if they say, the CBA would forbid us from doing that, and then there was evidence that they make exceptions to the CBA all the time, maybe that defense doesn't work for them. But isn't it your burden to introduce that evidence? I mean, just because your client asserts that what they're saying is not true, I'm not sure it creates a genuine dispute of material fact. I understand, Your Honor. We're saying that in addition to my client's testimony, that there was other testimony and evidence as well, in addition to my client. There's evidence that they violated the CBA for other people in the past? No, there's—not on that, Your Honor. No, I did not mean to intend that. Evidence that it would have been reasonable for them to allow him to continue to do this route. In other words, I want to address—I don't want to interrupt you. I want to address a finding of fact that I thought was pretty dispositive here in this case, where the court said, look, Mr. Hanna testified that this would have violated the collective barring agreement. And we pointed out in the record, that's not what he said. A counsel asked him a hypothetical, and Mr. Hanna said, well, if that were the case. It's our case that he did not dispositively testify that if they allowed him this, it would have violated the agreement. That's where we have one of the disputes. In other words, the judge made a crucial dispositive finding of fact that was clearly wrong and should itself result in reversal. That was part of what our argument was. Do you agree that the employer doesn't have to give the particular accommodation that's requested? So even if your requested accommodation was reasonable, the employer can choose a different reasonable accommodation. I would to the extent, as long as it's not unreasonable. In other words, if Mr. Hanna asked for something and the employer says, we can't do that, they would have to show it's unreasonable. Do they have to show that what he asked for is unreasonable if they offer something else that is reasonable? I would take the position that they have to show it's an undue burden. But don't you, I mean, you have to show that what they gave him is unreasonable. Not just that they gave him something different than what he asked for. Yes, Your Honor. So do you want to talk about why what he received was unreasonable? Yes, Your Honor. What he asked for was a different ride. What he got was basically a leave of absence, a medical leave of absence. Now, the court talks about how that was a reasonable accommodation. But my client did not ask for that. When he was on the medical leave of absence, he wasn't getting paid for that. He did not want a medical leave of absence. He wanted to continue to earn a salary. And that's the reason we're here because he challenged that. He didn't want to be put on a medical leave of absence. Is that the question? Is that the legal question for whether it's reasonable or unreasonable, is whether that's what he wanted? Or I thought the question had to do with if it's a reasonable accommodation. Like here, they gave him time off so that he could heal. That might not be reasonable if you have a condition that is never going to get better, right? Yes, Your Honor. But they gave him time off to heal and recover, get treatment. And then he came back to his job. He did, Your Honor. But we're saying that he didn't need the time off to heal. He could have driven with the truck that he wanted. Again, I submit it's a question of fact here. Okay. I realize there's maybe a question of whether an unpaid leave is a reasonable accommodation or not. So let me give you an accommodation that seems clearly reasonable. Let's say they say we can't give you a truck, but we'll let you work in the office with the same salary. We'll pay the same amount. The job is a totally pleasant office job. And he says, but I don't want to work in the office. I want another truck. In that situation, just basically to repose Judge Rushing's question, does he have a claim there? If what they give him instead is unquestionably reasonable, does he have any claim that they didn't give him the one he wanted? I would agree that in that situation, if he receives an office inside job and he's receiving the same salary and he's doing it, then in that case, I don't think his refusal would be supported in that case. I think that presents— Well, does his refusal even matter? Or does the employer say, I gave you a reasonable accommodation. I've satisfied my duties under the ADA. Well, whether he refuses or not, I think that would satisfy it, again. But I think that goes, in this case, with all due respect to the damages here. I mean, in this sense, the damage was he wasn't earning the salary he wanted. What is your best case for an unpaid medical leave of absence is unreasonable? I believe that's the—I mentioned this in a footnote, Your Honor. Let me find it. I believe Myers v. Hose, Fourth Circuit, 50 F. 3rd, 278, hold a request for indefinite medical leave without any insurance that the employee will be unable to fulfill her positions and essential functions upon return is unreasonable. Was it an unreasonable request by the employee? I honestly am not sure which way it went in that case. I admit, I don't remember whether it was by the employee. I apologize. Anything else? No, Your Honor. All right. Thank you, Mr. Glaser. You have some rebuttal. Why don't we hear from Mr. Wallace? Good morning, Your Honors. May it please the Court. Rick Wallace with Littler Mendelson on behalf of United Parcel Service. Your Honors, there is one overarching and undeniable truth that has gone unnoticed in this case by, I think, Mr. Hanna, and that is that it is undisputed that United Parcel Service, UPS, accommodated Mr. Hanna in every way and did so reasonably and successfully. And we know that because Mr. Hanna continues to work for UPS to this very day in the same position at the same rate of pay. Actually, he's making more now than he was during his period of temporary disability. And they accommodated him in a number of ways. He requested that they replace the seat in his truck. They did that. When his hip bursitis was diagnosed, part of the contractually bargained union agreements, they gave him alternative work within the parameters permitted by the contract. And then when that ended according to the negotiated terms of the contract, they gave him a leave of absence for which he sought and received short-term and long-term disability pay until he was able to return to work. He returned to work successfully and works there to this day. Mr. Myers, I know there are cases that say that an unpaid leave of absence can be a reasonable accommodation, but do you know of any of those cases where it was – I know of cases where the employee requests an unpaid leave and it's said that that's a reasonable accommodation. Do you know of any cases where an unpaid leave is granted over the objection of the employee and that's held to be a reasonable accommodation? No, Your Honor. And actually, to that point, when Mr. Glazer was talking about the Myers v. Ho's case, every case cited by the appellant in their brief dealing with that issue about whether a leave of absence is going to be a reasonable accommodation is in opposite to their position. I'm thinking about even the findings that accompany the ADA that talk about one of the harms of being disabled is people assuming that you're unable to work. There's a statement in the ADA's legislative history that says, like, not working could be one of the truest definitions of being disabled in the United States. And so it seems a little strange to me that an employer could say, here's our solution to the fact that you can't do the job without some change to the way our workforce works. How about you stay home and we not pay you? And it seems a little weird to say that is a reasonable accommodation of someone's disability. Stay home and we won't pay you. Well, Your Honor, perhaps if that was the finite out of the gate, that's all we're going to consider, then perhaps that could be an issue. But that is not the factual case here. The undisputed record is that they engaged in a lengthy interactive process with Mr. Hanna, whereby he was permitted to provide information about his medical condition, how it impacted his ability to work, and what his requested accommodations were. And as we all know, what he requested was a smaller truck. It is absolutely undisputed in the record that UPS then engaged in a very deliberative evaluation as to whether it could in fact grant the precise accommodation that Mr. Hanna requested. And as part of that, it wasn't just one person. The testimony, it was, the undisputed testimony was from Chris Westfall, who was their human resources manager. You can find that testimony at page 705 to 708 of the appendix, Your Honor. It was a committee. It involved human resources, the labor team, an occupational health nurse, and counsel. And they examined all of the factors and parameters surrounding that request. And as Judge Niemeyer noted earlier, one of the overriding problems with that request was twofold. The first, there was a separate, there is a factual, it's undisputed, that both the plaintiff, Mr. Hanna himself admitted, and then the undisputed testimony in the record from UPS's fleet manager was that those trucks did not exist at his worksite. But then, so when I was reading the record about that, it's a little confusing because like, the record was unclear to me whether worksite means like literally the place he works, or there's not one anywhere near the place. I don't know how UPS is structured, right? I don't know how close these other trucks are or not. And the record doesn't seem super clear on that question. Sure, well, the record, Mr. Garland. To me, that's a pretty thin thing because if you have those trucks anywhere in the area, it's not a big deal to just drive it over to the location. It seems to me that might be a question of reasonableness, if that was the only reason you couldn't drive it 30 miles or 40 miles or whatever it is. No doubt, Your Honor. And that was not the overriding reason that they were unable to provide that accommodation. As has been recognized, there was a bargained for collective bargaining agreement that governed the terms of Mr. Hanna's employment. And part of that is all of the routes that these UPS drivers are on, including Mr. Hanna's, are bid upon according to seniority. And they are assigned to the drivers pursuant to the terms of the CBA based on seniority. And once that happens, the undisputed testimony in the record is that a specific package truck is assigned to that route based upon the size, length, et cetera, of that route. And the UPS human resources person even admitted, yeah, we can move trucks around, but they have to be of a size and type that will accommodate the contractually bid upon route. And it's just common sense, Your Honor. A big brown UPS truck like we're all familiar with holds a whole lot more packages than a Dodge pickup, which Mr. Hanna was requesting. And so when they were evaluating whether they could allow Mr. Hanna to continue on his contractually bid upon route with one of the smaller trucks as he requested, it became very clear to the group that was reviewing it that that would create a number of problems and violations of the collective bargaining agreement. And it was twofold. Because it would be so much smaller, they determined that there was no way that a pickup truck is going to hold as much as the big brown UPS truck. And so there were two alternatives that were considered. One would be that they could have other drivers assist on that route to help with the package deliveries. And that would have created a violation of the collective bargaining agreement because they would be pulling those drivers off of their contractually bid upon routes and moving them to a position that they neither wanted nor bid upon. So that would have been one CBA violation. The alternative was that they could allow Mr. Hanna to make multiple trips to and from the loading distribution center with a smaller truck. And that was ultimately determined when evaluating the logistics and the collective bargaining agreement that that would likewise create a collective bargaining violation because Mr. Hanna and other UPS drivers, according to the terms of the CBA, are contractually limited to no more than nine and a half hours of dispatch. And these routes are planned basically to the minute. I mean, to the point that UPS trucks try to avoid left turns if possible because you have to turn across traffic and it slows things down. So having him going back and forth to the loading facility multiple times during the day would have then put him over nine and a half hours of dispatch, which would have been a separate violation of the collective bargaining agreement. So when they did that comprehensive evaluation, it became very clear that there was no way that they could provide a smaller truck to Mr. Hanna without violating the terms of the collective bargaining agreement. And it's black letter law under decades of ADA jurisprudence that an employer is not required to violate a collective bargaining agreement as part of the accommodation process. So what was ultimately decided upon is exactly where we are, which is that the only accommodation that worked was a leave of absence. And so he was out for seven or eight months, if I recall correctly, during which he received disability benefits. And when he was released to return to work, he put him back to work, which satisfied the spirit, intent, and letter of the Americans with Disabilities Act. I mean, you could have just paid him when he was on this leave that you decided to gift him with. Would that have been a reasonable accommodation? Well, Your Honor, he did. No, no. Did UPS pay him or did the unemployment compensation? Who paid him when he was on leave? UPS provides short- and long-term disability benefits of which he availed himself. That were directly funded by UPS? They were insured products for which UPS pays a portion. And I think for short-term, they paid all of the premiums. I think the employee had some contribution to the long-term or vice versa. But he was, in fact, it's inaccurate to suggest that he had no income at all during this period. He was paid 70% of his normal salary, so he still had an income. So I guess the question is, is it possible to rule for you in this case without deciding that an unpaid leave of absence to which the employee objects is a reasonable accommodation? Is there a way to rule for you without having to decide that question? Well, yes, Your Honor. I believe absolutely there is. Because if you just look at what happened— Well, I guess you could just say the one accommodation he requested the employer showed was unreasonable. Correct. And what this case is ultimately about is that Mr. Hanna believes that the circuit court erred and that UPS violated the law because it didn't give him his precise accommodation. Well, I don't. In my understanding, it's a little more complex. But I think the prima facie case requires him to show that there was a reasonable accommodation. And then the employer has the burden to come back and say that it's unreasonable or a burden on the business. And in this case, the question is the accommodation he requested turned out not to be reasonable. And that would then undermine the prima facie case, wouldn't it? That's correct, Your Honor. I don't know if that's so. I'm just trying to address a little bit of the question that Judge Heiden's raised. But there's a blur in my own mind between the burden that he carries in showing the reasonable accommodation and the defense that the employer has to provide once that burden is carried. Certainly, Your Honor. Yes. And that is an important point in this case. It is, in fact, Mr. Hanna's burden to show that a reasonable accommodation existed. And we've discussed how it's undisputed that his precise accommodation was not reasonable because it would have been violative of the collective bargaining agreement. And part of the problem with one of their points of error is that they now argue, and Mr. Glazer said, well, he should have been given a trial run or some sort of test period. That is not something that has ever been part of ADA jurisprudence and, in fact, would shift the burden to the employer to then demonstrate and basically have to exhaustively test every possible accommodation in order to then determine something was reasonable or unreasonable. So it is an impermissible burden shifting as well with this argument that UPS was somehow obligated to do some sort of test run. And at the end of the day, Your Honor, like I mentioned at the outset, we know that it was reasonable and a successful accommodation, this leave of absence, because there were no other possible accommodations, including his precise accommodation. And it worked. Could I ask you that? Why wouldn't it have been possible to give him what I would just colloquially call a desk job during this period of time? Would that have also violated the CBA? Yeah, that would have. Absolutely, Your Honor, because every position, whether it's inside clerical work, whether it's the folks loading the trucks, pre-sorting the packages, the drivers on the road, those are all bid upon positions pursuant to the collective bargaining agreement that are seniority based. And that's in the record. The evidence was not that, but that there were no vacancies. Well, I was getting to. Yes, Your Honor, that is also true. It's both. They go hand in hand. But it seems to me if there was a vacancy, he could apply for it, couldn't he? Yes, if there was a vacancy. So what you were just saying is not a barrier. In other words, if there was a vacancy, he could have done a desk job. Absolutely, Your Honor. But it is undisputed in the record that there were no vacancies. And that's what I was getting to. So because all of these are contractually bid upon positions, if there's not a vacancy, then he would have to displace somebody from a contractually bid upon seniority awarded position. And under the terms of the collective bargaining agreement, the only time there are bumping rights, meaning obviously the ability to bump somebody out, an incumbent out of a position in which they already are slotted, would be if he had been economically laid off. And that is undisputed that that did not happen. So because there were no vacancies, it would have been violative of the CBA to put him in one of these other positions because he would have been displacing somebody without contractual support and would have been actually contrary to the existing CBA to do so. So, Your Honor, again, what what this case is ultimately about is that Mr. Hanna believes the circuit court erred because it determined rightfully so that UPS provided a reasonable accommodation to the plaintiff. But it wasn't the precise accommodation. And every single point of error asserted by Mr. Hanna goes to that very point that the error was because he didn't get his precise accommodation. And to find otherwise would be to literally turn decades of jurisprudence under the ADA on its head, because it's black letter law in this circuit and every other circuit that the employer is not obligated to provide the precise accommodation requested by an employee so long as they offer a reasonable accommodation. And like I said here, they accommodated him in multiple ways, replacing the seats, giving him alternative work within the parameters of the CBA. And then when that was no longer possible contractually and for the reasons we've already discussed, they couldn't give him a smaller truck. They gave him a leave of absence that allowed him to continue successfully working with UPS to this day. Is that it? Yes. Thank you, Your Honor. Thank you. Mr. Glazer. Thank you. This is Neal Meyer. I'll be brief. We're not asking to overturn decades of law. Far from it. We're asking for a chance to present facts on the factual issue of whether or not it was reasonable. There's nothing to do with we're not asking for overturning law. Could you address for me what your understanding is of the burden that you have in establishing a prima facie case and the burden the employer has in responding to it? I'm focusing on just the accommodation aspect. Yes, Your Honor. So we have to show that an accommodation existed that is reasonable. And we presented evidence to show I want to address once. What's the employer's burden? Their employer's burden is to show that it is an undue burden or that it's not reasonable. In other words, the employer has to say, look, we can't do this because if we do this, we're going to have to, as Mr. Wallace says, displace workers or we're going to have to. The Supreme Court has concluded that collective bargaining agreement is a burden. You have to accommodate collective bargaining agreements. And is that part of the assessment of the prima facie case or the employer's response? I believe that goes to the burdenship. In other words, the Supreme Court says it's presumptive. If you violate a collective bargaining agreement, it's presumed that it is an unreasonable request. But you can show. I'm sorry. You agreed that the plaintiff has the burden under the act to show that a reasonable accommodation exists. Yes, Your Honor. Does that mean that you have to address the barriers created by the collective bargaining agreement? No, sir. You mean you can claim a reasonable accommodation exists even though it's in violation of the collective bargaining agreement? I believe under the U.S. Airways case, I can. Yes, Your Honor. I mean, in this case, we showed that they had a fleet of vehicles, that they have all these trucks available and that it would not have been an imposition for him to have to allow him to drive one of these trucks that had lesser cubic feet in it. Well, as I understand, the pickup trucks had three to 400 cubic feet and the big truck had 600 cubic feet. And so the question is, he would have to be able to do his route with. In other words, over the years, he did that route. Was his truck half empty all the time? And there's no evidence to suggest that because if it was about half empty all the time, then maybe he could have done the route with a smaller truck. But I'm sure UPS was carefully assigning the size truck to the route based on the number of the size of the packaging that they had statistically had to deliver. And so they assigned a 600 cubic foot truck to that route. And his argument is that he thought he might be able to do it with a smaller truck. But there's no, he didn't actually say that.  But it seemed to me it's almost common sense that he'd still have to make at least one return back to the loading dock. Well, it's our position that. This is a country route, as I understand it. He had, what, some 30 miles just of driving before he got a lot of it delivered. Correct. But in this case, a lot of the records that we wanted, we couldn't get because. I'm talking about the substance of what we do. We can, if you're raising, if your appeals dependent on the lack of records, then we can make that argument. But I don't understand that in your argument on your brief. Your brief basically was that the accommodation he requested was reasonable and that the, what they, their response was unreasonable. Yes, Your Honor. And we think that there's enough evidence here to submit to a jury on that, to listen to each side, determine whether my client is credible because he'd been there for over a decade and a half, and to listen to the evidence that we presented and listen to the evidence that they presented. In other words, as you well know, you've done this much longer than I ever hoped to do. It's a very minimal burden to resist a summary judgment, and we think we met that here, Your Honor. Well, I know, but there was no credibility issue. He wasn't a dishonest guy or he wasn't a malingerer. As a matter of fact, he sounds to me like an employee that every employer would like to have. But unfortunately, he had this injury. And the question is now, how do we take care of it? And he's back working there, and I'm sure both he and the company are happy with their ongoing relationship. We have this interim where he had this injury he had to take care of. Yes, Your Honor. So the issue is whether the company violated the ADA during that period. I understand, Your Honor, and I know our time is expiring. We just asked to submit that it is a fact issue, and I appreciate your time. Thank you. I think we understand. Thank you, sir. Our practice would be to come down and shake your hands. We would love to do that, and maybe next term of court we might be able to, but we're still under the protocols for this term. And so we'll greet you from the bench here and thank you for your arguments and look forward to seeing you again in court. We'll proceed on to the next case.
judges: Paul V. Niemeyer, Allison J. Rushing, Toby J. Heytens